**Lyn LEA, Ken S. Lea and John Doe, Appellants,**

v.

**Carolyn PIEPER, Robert Pieper, Mark Pieper and David Pieper, d/b/a Eaton Mobile Home Park, Respondent.**

**No. C4–83–1554.**

Court of Appeals of Minnesota.

March 14, 1984.

Dixon E. Jones, Bloomington, for appellants.

Karla R. Wahl, Minneapolis, for respondents.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This is an appeal from an order for a conditional writ of restitution requiring appellants to surrender possession of a lot in a mobile home park. The case began with an unlawful detainer proceeding by the owners of the mobile home park. After a court trial in Dakota County Court on August 23 and 26, 1983, the court found that the defendants did not comply with the

rules and regulations of the mobile home park, and held that the appellants were unlawfully detaining the lot from the park owners. We reverse.

## FACTS

Respondents own and operate Eaton Mobile Home Park located in Apple Valley, Minnesota. Lyn Lea's mobile home occupied lot D when the respondents purchased Eaton Mobile Home Park in 1980.

The last written lease between Lyn Lea and respondents is dated June 5, 1982, covering the period June 1, 1982, through November 30, 1982. The home was occupied intermittently by Lyn Lea.

There was conflict over a possible subletting by Lyn Lea to a friend. Subletting was prohibited by the lease. Lyn Lea did not sign a new lease on December 1, 1982. The park apparently had no complaints and the unit remained vacant until late May 1983. Lyn Lea had paid rent monthly from December 1982 through May 1983. The park accepted rent each month, even though there was no lease.

Ken Lea and Dan Lieber moved into the mobile home over Memorial Day weekend, 1983. On June 3, 1983, Lyn Lea and her son, Ken Lea, applied for a transfer of title from Lyn Lea as sole owner to Lyn and Ken Lea as joint owners. On June 6, 1983, Lyn and Ken Lea went to the park office to sign a lease. Lyn Lea did not sign the lease because she was not the primary occupant. Ken Lea signed the lease and wrote in Dan Lieber's name as the other occupant. Ken Lea testified that the mobile home park management did not sign the lease and did not give him a copy. The park office had also earlier refused to allow a copy of the lease to leave the office.

Respondent's attorney sent a letter dated June 16, 1983, to appellants notifying them that their possession of lot D would be terminated July 19, 1983. The letter explained that termination was the result of the appellant's failure to comply with state law and park regulations—specifically, the lack of a written rental agreement and the prohibition against subletting. The letter did not mention nuisance or substantial annoyance.

Lyn Lea paid July rent on or about July 1, 1983. The rent for the entire month was accepted by respondents.

Ken Lea and Dan Lieber went to the park office on July 8, 1983, and began to fill out an application. While they were in the office, the office manager made a telephone call, apparently to respondent Carolyn Pieper. The manager then told appellants their application could not be accepted. Ken Lea did not finish the application, nor did Dan Lieber, and neither signed it.

Respondent Carolyn Pieper mailed a notice dated July 26, 1983, to Ken Lea specifying noise and behavior complaints. The summons and complaint were served on July 28, 1983, to Ken Lea and Dan Lieber, and to Lyn Lea on August 2, 1983.

The trial court made three crucial findings that appellants claim are not supported by the evidence. The trial court found that neither Ken Lea nor Dan Lieber made application for residency and that neither entered into a written lease agreement. The trial court also found that the transfer of title to Lyn Lea and Ken Lea as joint owners was made after receipt of the termination notice and was made to circumvent park rules. The third crucial finding was that the respondents did not accept rent from the appellants after expiration of the notice to quit.

The trial court concluded that the appellants failed to sign a written rental agreement and that appellants' behavior substantially annoyed other residents. The trial court also concluded that one of the appellants, although not specified, occupied the mobile home when he was not an owner. The trial court issued a conditional writ of restitution.

## ISSUES

1. Does the record support the trial court's finding that appellants did not comply with the park rules by failing to sign a

written rental agreement and were therefore not entitled to occupy lot D?

2. Were appellants given notice of "substantial annoyance" of other park residents in sufficient compliance with Minn.Stat. § 327C.09, subd. 5 (1982) to justify the court's order of restitution?

3. Did the respondent waive the notice to vacate by accepting the July rent?

4. Are two persons entitled to occupy a mobile home if one occupant is not an owner of the home?

### ANALYSIS

Only the transcript of the testimony of Ken Lea and Lyn Lea was included in the record on appeal. Respondent quotes freely from the "record" below without furnishing the court with the transcript. We disregard all such references and remind counsel to avoid references outside the record.

1. This is a case of first impression under a recent comprehensive legislative enactment attempting to regulate mobile home park lot rentals with a view to balancing the positions of park owners and residents. *Laws of Minnesota 1982*, Chapter 526, article 2.

Minn.Stat. § 327C (1982) governs Manufactured Home (Mobile Home) Park Lot Rentals. Minn.Stat. § 327C.02, subd. 1 (1982), requires a writing to rent a lot. This statute reads, in part:

Every agreement to rent a lot must be a written agreement signed by the park owner and the resident. A copy of the rental agreement shall be given to the applicant for the purpose of reviewing the agreement prior to signing it. * * *

The arrangement between respondents and appellants existed without a proper agreement from December 1, 1982, to the present. Appellants attempted to comply with the rule and applied for a lease on June 6, 1983. However, their efforts were thwarted by respondents. Ken Lea signed a lease that day. The lease was not signed by park management, nor did appellants receive a copy of it. Appellants received an eviction notice dated June 16, 1983. On July 8, 1983, Ken Lea went to the park office to correct any violations. The office manager notified him that his application would not be accepted. Respondents again stopped appellants' attempts to comply with the requirement of a writing.

■ Termination of a lot rental is covered by Minn.Stat. § 327C.09 (1982). Subdivision 1 of this section requires cause for termination, and reads:

A park owner may recover possession of land upon which a manufactured home is situated only for a reason specified in this section.

The trial court concluded that appellants' failure to comply with the park rules prohibits appellants from occupying lot D. A rule violation constitutes cause for eviction under subdivision 4. However, this section contains a notice provision. Minn.Stat. § 327C.09, subd. 4, provides:

The resident fails to comply with a rule within 30 days after receiving written notice of the alleged noncompliance, except the 30 day notice requirement does not apply to nonpayment of rent.

The appellants received written notice of rule violations in the June 16, 1983, termination letter. Under the statute, they must be provided 30 days to correct a violation. Appellants attempted to fill out a rental application to comply with the rules, but were told by the office manager the application would not be accepted. The trial court's conclusion of law that appellants failed to comply with the park rules is therefore not supported by the evidence in the record.

2. In their challenge of the trial court's conclusion that they substantially annoyed other residents, appellants are not raising the factual issue of substantial annoyance. Rather, compliance with a statute is at issue in this appeal. The substantial annoyance provision reads, in part:

The resident acts in the park in a manner which endangers other residents or park personnel, causes substantial damage to the park premises or substantially annoys other residents, and has received 30

days written notice to vacate, except the park owner may require the resident to vacate immediately if the resident violates this subdivision a second or subsequent time after receipt of the notice. Minn.Stat. § 327C.09, subd. 5.

■ A resident violates subdivision 5 if the resident substantially annoys other residents and has received 30 days written notice to vacate. Appellants received notice to vacate dated June 16, 1983, but the letter did not refer to "substantial annoyance" nor to noise or behavior complaints. Appellant Ken Lea received a letter from Carolyn Pieper dated July 26, 1983, which specified noise and conduct complaints. That letter was not a notice to vacate. Even if it were, the summons and complaint were served on July 28, 1983, and August 2, 1983. No 30-day period had elapsed.

■ Immediate eviction is justified only if a resident violates subdivision 5 a second or subsequent time after receipt of notice to vacate. Appellants were not given 30 days notice to vacate under that provision of the Act. They had no opportunity to correct their conduct. Because of insufficient compliance with the notice requirements of Minn.Stat. § 327C.09, subd. 5, the appellants were not subject to termination under the substantial annoyance section of the statute.

3. Respondents waived the June 16, 1983, notice to vacate by accepting July rent. Minn.Stat. § 327C.11 (1982) governs eviction proceedings. Subdivision 2 reads as follows:

> A park owner who gives a resident a notice as provided in section 327C.09, subdivisions 3, 4, 6, 8 or 9, does not waive the notice by afterwards accepting rent. Acceptance of rent *for a period* after the expiration of a final notice to quit *waives* that notice unless the parties agree in writing after service of the notice that the notice continues in effect.

(Emphasis added). The July rent was accepted about July 1, 1983. The expiration of the notice to vacate was July 19, 1983. While rent was not accepted after the expiration of the notice, rent was accepted for a period after the expiration of notice. That period is from July 20 through July 31, 1983. Since rent was accepted for a period after expiration of notice, the June 16, 1983, notice was waived.

■ If the legislature had meant only acceptance of rent for a *rental period* after expiration of a notice waives the notice, it would have said so. The respondents' argument that it is inconvenient for a park owner to prorate rent where a notice to vacate specifies a date within a rental period is unpersuasive in this day of inexpensive electronic calculators.

■ The trial court's finding number 15 states, "the plaintiffs did not accept rent for lot D from the defendants after expiration of the time stated in the park's notice to quit." That is true. But the issue is not whether the park owners performed the act of accepting rent after July 19, but whether they accepted rent for a period after July 19. This they did, and the notice to vacate was thereby waived.

4. The trial court also concluded that since one resident occupied the mobile home and was not an owner, the appellants were unlawfully detaining lot D. It is unclear to which occupant the court referred. Even so, the statute does not require both occupants to be owners.

■ A rule requiring more than one occupant of a mobile home to have an ownership interest in that home is presumed unreasonable under Minn.Stat. § 327C.05, subd. 2(d) (1982), and the rule is invalid unless shown to be reasonable by clear and convincing evidence as required by that section. Ken Lea and Dan Lieber were living in the home on June 16, 1983, the date the notice to evict was written. Ken Lea had an ownership interest transferred to him on June 3, 1983. He was an owner on the date the notice was written. This is contradictory to the trial court's finding number 12 that the transfer to Ken Lea was made after receipt of the notice and was done to circumvent the park's rules.

■ The face of the title document shows a transfer date of June 3, 1983. The title was issued June 20, 1983. Even if the title had not been transferred until June 20, 1983, the appellants would have had 30 days from written notification to comply with the regulation. Minn.Stat. § 327C.09, subd. 4. The trial court's finding regarding transfer is not supported by the record, and the conclusion that the appellants are not entitled to occupy lot D because one resident is not an owner is erroneous.

## DECISION

The trial court's decision is not supported by the evidence. The appellants may not be evicted from the mobile home park for failing to sign·a rental agreement when their attempts to sign were blocked by the park owners. Further, the appellants never received a notice to vacate specifying their annoying behavior and thus this cannot be a basis for eviction. Beyond that, the park owners waived their notice to vacate because they accepted rent for a time period after the June 16, 1983, notice to vacate expired. Finally, a rule requiring all residents of a mobile home to be owners of the home is presumed unreasonable and thus the trial court's conclusion in this respect was erroneous.

Reversed and conditional writ of restitution discharged.