498 N.W.2d 465 (1993)
KIRKWOLD CONSTRUCTION COMPANY, Respondent (C1-92-1227), Plaintiff (C5-92-1764),
v.
M.G.A. CONSTRUCTION, INC., et al., Defendants,
Minnesota Valley Surveyors, Inc., Ulteig Engineers, Inc., Respondents (C1-92-1227),
Turner Excavating Company, Respondent (C1-92-1227), Appellant (C5-92-1764),
Miller and Schroeder Investments Corporation, et al., Appellants (C1-92-1227), Respondents (C5-92-1764),
Cherrier Land Surveyors, Inc., Specialty Systems, Inc., Respondents (C1-92-1227).
MINNESOTA VALLEY SURVEYORS, INC., Respondent (C1-92-1227), Plaintiff (C5-92-1764),
v.
HOLIDAY STATIONSTORES, INC., et al., Appellants (C1-92-1227), Respondents (C5-92-1764),
Duckwood Crossings, Inc., et al., Defendants,
Ulteig Engineers, Inc., Respondent (C1-92-1227),
Turner Excavating Company, Respondent (C1-92-1227), Appellant (C5-92-1764).
ULTEIG ENGINEERS, INC., Third-Party Plaintiff, Respondent,
v.
M.G. ASTELFORD COMPANY, INC., et al., Third-Party Defendants.
Nos. C1-92-1227, C5-92-1764.
Court of Appeals of Minnesota.
April 6, 1993.
Review Granted May 28, 1993.
*467 Dennis P. Moriarty, Jaspers Moriarty & Walburg, P.A., Shakopee, for Kirkwold Const. Co.
Clinton McLagan, St. Paul, for Minnesota Valley Surveyors, Inc.
William Clelland, Carson & Clelland, Minneapolis, for Ulteig Engineers, Inc.
Loren E. Gross, Minneapolis, for Turner Excavating Co.
Bradley N. Beisel, Scholle and Beisel, Ltd., Minneapolis, for Miller and Schroeder Investments Corp.
James D. Hoeft, Barna, Guzy & Steffen, Ltd., Coon Rapids, for Cherrier Land Surveyors, Inc.
John L. Neveaux, Jr., Louis B. Oberhauser, Oberhauser & Neveaux, P.A., Wayzata, for Specialty Systems, Inc.
James T. Swenson, Mackall, Crounse & Moore, Minneapolis, for amicus curiae Minnesota Land Title Ass'n.
Kathleen O'Connor, Kampmeyer & O'Connor, St. Paul, for amicus curiae Minnesota Soc. of Professional Engineers, the Consulting Engineers Council of Minnesota, the Ass'n of Independent Architects and the Minnesota Soc. of Professional Surveyors.
Considered and decided by HARTEN, P.J., and KLAPHAKE and MULALLY,[*] JJ.

OPINION
KLAPHAKE, Judge.
Miller and Schroeder Investments Corporation and Holiday Stationstores, Inc. appeal from an amended judgment and order denying post-trial motions, contending the trial court erred in holding mechanics' lien claims superior to their interests and further challenge the awards of attorney fees. Turner Excavating Company appeals from an amended judgment, contending the trial court erred in holding Turner did not establish a valid lien claim against Holiday's property. We affirm in part and reverse in part.

FACTS
In 1989, Duckwood Crossings, Inc. (Duckwood) began developing a retail project on three lots in Dakota County. Duckwood retained respondents Minnesota Valley Surveyors (Minnesota Valley) and Ulteig Engineers (Ulteig) to perform surveying and engineering work on the lots. Minnesota Valley began work on February 20, 1989 and Ulteig began work on April 10, 1989. Duckwood, however, did not make full payment.
On October 30, 1989, Duckwood sold one lot (the Holiday lot) to appellant Holiday Stationstores, Inc. (Holiday), mortgaged the remaining lots (the Miller lots) with appellant Miller and Schroeder Investments Corporation (Miller), and recorded the transactions. Although both Holiday and Miller knew of Minnesota Valley and Ulteig's work, neither knew the two companies had not been paid. At the closing, Duckwood provided an affidavit stating no *468 unpaid labor or material had been provided to the property.
On November 2, 1989, respondent Turner Excavating Company (Turner) began the first visible improvement on the ground. Duckwood instructed Turner to give priority to the preparation of the Holiday lot. During late 1989, Turner stripped top soil from the Holiday lot and stockpiled the dirt on the property line between the Holiday lot and the adjoining Miller lot.
After Duckwood failed to meet leasing obligations, Miller foreclosed on its mortgages. In the meantime, Minnesota Valley and Ulteig filed mechanics' liens. Turner also filed a mechanics' lien, along with respondents Kirkwold Construction Company (Kirkwold), Cherrier Land Surveyors, Inc. (Cherrier) and Specialty Systems, Inc. (collectively "subsequent lienholders"), three other companies who had contributed labor or materials after November 2, 1989.
In two separate actions, Minnesota Valley and Kirkwood sued to establish lien priority. These actions were later consolidated and the parties, except Turner, litigated the priority issue before the court in the first phase of a bifurcated trial. The trial court concluded the lien claimants' interests took priority over the Miller mortgages, allowing the subsequent lienholders to tack onto the date of Ulteig and Minnesota Valley's first contribution to the improvement. The trial court also concluded that the Ulteig and Minnesota Valley liens were superior to Holiday's ownership interest, but refused to allow the Cherrier claim to take priority over Holiday because Cherrier failed to serve the required statutory notice. See Minn.Stat. § 514.08 (1990). During the second phase, the trial court determined Turner's lien to be superior to the Miller mortgages by tacking onto Ulteig and Minnesota Valley's first contribution date. The court also found Turner did not establish a valid lien claim to the Holiday lot. Finally, the trial court awarded damages, attorney fees and costs to all of the lien claimants. Holiday and Miller appeal from the amended judgment and order denying their post-trial motions, Turner appeals from the amended judgment.

ISSUES
1. Did the trial court err in ruling the liens of Ulteig and Minnesota Valley had priority over the recorded interests of Holiday and Miller?
2. Did the trial court err in allowing all subsequent lienholders to tack onto Ulteig and Minnesota Valley's lien, thereby giving them priority over the interests of Holiday and Miller?
3. Did the trial court err in denying Turner a lien against the Holiday lot?
4. Did the trial court abuse its discretion in awarding attorney fees?

ANALYSIS
The issue of lien priority involves interpretation of the mechanics' lien statutes and presents a question of law reviewable by this court. See Hibbing Educ. Ass'n v. Public Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985). We need not defer to the trial court when reviewing its conclusions of law. Frost-Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n, 358 N.W.2d 639, 642 (Minn.1984). Should application of the law depend on findings of fact, however, such findings will not be overturned on appeal unless clearly erroneous. Citizens State Bank of Hayfield v. Leth, 450 N.W.2d 923, 925 (Minn.App.1990).

I.
The parties do not dispute that Ulteig and Minnesota Valley are entitled to assert mechanics' liens against the Holiday and Miller properties. At issue is the question of priority among the interests. Holiday and Miller contend their interests are superior to those of Ulteig and Minnesota Valley because Holiday and Miller recorded their interests before any actual and visible improvement on the ground. We disagree.
Minn.Stat. § 514.05, subd. 1 (1990) determines the priority between lienholders and others who hold an interest in the property:
All liens, as against the owner of land, shall attach and take effect from the time the first item of material or labor is *469 furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground.

(Emphasis added.)
Here, both Holiday and Miller had actual notice of the work performed by Ulteig and Minnesota Valley. Under the plain language of the statute, Holiday and Miller are not bona fide purchasers or mortgagees without actual or record notice and therefore fall outside of the actual and visible beginning provision. See Nadeau v. Austin Mut. Ins. Co., 350 N.W.2d 368, 373 (Minn.1984) (statute construed according to plain and ordinary meaning). Rather, Holiday and Miller stand in the same position as an owner for priority purposes. See Reuben E. Johnson Co. v. Phelps, 279 Minn. 107, 113, 156 N.W.2d 247, 251 (1968) (where mortgagee has notice that labor or materials for improvement have been furnished, mortgagee stands in same position as owner).
As against an owner, a mechanics' lien attaches at the time the first material or labor for the improvement is furnished upon the property. Minn.Stat. § 514.05, subd. 1. Therefore, we agree with the trial court that the liens of Ulteig and Minnesota Valley attached when they first began working on the property and have priority over the interests of both Miller and Holiday.

II.
The remaining respondents are composed of companies performing work on the property on or after November 2, 1989, after the interests of Miller and Holiday were recorded and after the actual and visible beginning of the improvement on the ground. The trial court allowed these subsequent lienholders to tack their liens to the liens of Ulteig and Minnesota Valley for priority purposes because Miller and Holiday had notice of the work performed by Ulteig and Minnesota Valley. We disagree with this analysis.
The parties do not dispute that the actual and visible beginning of the improvement on the ground occurred on November 2, 1989, when Turner began grading and excavating. Under section 514.05, a claimant asserting a lien against a bona fide purchaser or mortgagee without actual or record notice obtains priority as of the date of the actual and visible beginning of the improvement on the ground. Minn.Stat. § 514.05, subd. 1. In arguing that their liens should tack onto the Minnesota Valley and Ulteig liens, the subsequent lienholders fail to consider the language of Minn.Stat. § 514.05, subd. 2 (1990), which provides:
Visible staking, engineering, land surveying, and soil testing services do not constitute the actual and visible beginning of the improvement on the ground referred to in this section.
That Holiday and Miller had actual notice of the work by Minnesota Valley and Ulteig does not establish priority for all subsequent lienholders. Indeed,
knowledge of contemplated improvement or of the facts that the architect's preliminary plans for the improvement and a survey have been made does not constitute an actual and visible beginning of the improvement on the ground so as to permit liens filed subsequent to the mortgage to attach as of the time of such preliminary plans or survey.
M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co., 279 Minn. 278, 286-87, 156 N.W.2d 748, 753-54 (1968).
We conclude the work performed by Ulteig and Minnesota Valley cannot be used to establish lien priority for the subsequent lienholders. The liens of the subsequent lienholders may only tack onto the date Turner's lien attached because that is when the first actual and visible improvement to the property occurred. Miller and Holiday recorded their interests prior to November 2, 1989; thus, they maintain priority over Turner, Kirkwold, Cherrier and Specialty Systems.

*470 III.
Turner challenges the trial court's determination that it is not entitled to a lien against the Holiday lot. Holiday and Turner dispute the facts surrounding Turner's claim. Upon review, this court will accept the trial court's findings unless clearly erroneous. Citizens State Bank, 450 N.W.2d at 925.
The trial court found that Turner contracted with Duckwood in September 1989 for site preparation of all lots. The trial court found that, beginning November 2, 1989, Turner stripped top soil from the Holiday lot and stockpiled it on the property line between the Holiday lot and the adjoining Miller lot. The court further found that Duckwood agreed to give priority to preparing the Holiday lot. In addition, the court found Turner did not perform any work on the Holiday lot after November 29, 1989, except for removing the stockpile, which was unrelated to the Holiday lot. Finally, the court found Turner has been paid for the 1989 improvements to the Holiday lot.
Turner claims it performed substantial work on the Holiday lot in 1990 which entitles it to a lien. This work involved removing the existing stockpile from Holiday's lot line and grading the area where the stockpile had been. The record, however, supports the trial court's finding that the stockpile was partially located on the Holiday lot for Turner's convenience and that its removal benefitted Duckwood and was unrelated to the Holiday lot improvements. Rather, the record shows Turner removed the stockpile to fulfill its contractual agreements for the remaining lots. In addition, the record shows that, in spring 1990, M.G.A. Construction, which had taken over the project from Duckwood, paid Turner the $6,500 that Turner billed for its work on the Holiday lot and contracted anew with Turner to complete the original project. These facts support the trial court's finding that Turner has been paid for the Holiday lot improvement.
Under these facts, Minn.Stat. § 514.09 (1990) does not allow Turner to claim a lien against all three lots. Section 514.09 allows a lienholder, who has contributed to improvements on adjoining lots pursuant to one contract with the owner, to file one lien statement for the entire claim. Minn.Stat. § 514.09 (1990). Turner received full payment for its completed work on the Holiday lot in 1989 and executed a new contract to complete work on the Miller lots. Under these facts, any existing lien Turner may have had against the Holiday lot disappeared. Cf. American Bridge Co. of N.Y. v. Honstain, 120 Minn. 329, 332-34, 139 N.W. 619, 620-21 (1913) (one mechanics' lien may be filed for "one job," but not for work performed under separate contracts). We conclude the record supports the trial court's findings and further conclude Turner failed to establish a basis for claiming a lien against the Holiday property.

IV.
A trial court's award of attorney fees in mechanics' lien cases is discretionary. C. Kowalski, Inc. v. Davis, 472 N.W.2d 872, 878 (Minn.App.1991), pet. for rev. denied (Minn. Sept. 13, 1991). In determining whether to award attorney fees, the trial court considers
time and effort required, novelty or difficulty of the issues, skill and standing of the attorney, value of the interest involved, results secured at trial, loss of opportunity for other employment, taxed party's ability to pay, customary charges for similar services, and certainty of payment.
Jadwin v. Kasal, 318 N.W.2d 844, 848 (Minn.1982) (citation omitted).
We observe no abuse of discretion in the trial court's award of attorney fees. The trial court reviewed the issue of attorney fees carefully and secured supplementary memoranda and supporting affidavits. The case involved numerous parties and complex issues. We reject any argument that the fees are excessive merely because they may exceed the lien amounts. Limiting fees in such a manner would discourage small lienholders from pursuing valid claims through the legal system. Although certain fee awards are high in comparison to the lien amounts recovered, the *471 trial court did not abuse its discretion in awarding fees.

DECISION
The trial court properly applied Minn. Stat. § 514.05 (1990) to determine Ulteig and Minnesota Valley are entitled to lien priority over Holiday and Miller. The trial court erred, however, in allowing all subsequent lienholders to tack their liens to those of Ulteig and Minnesota Valley. The record supports the trial court's findings that Turner did not improve the Holiday lot in 1990, and these findings support the conclusion that Turner did not establish a valid lien claim against the Holiday lot. Finally, the trial court did not abuse its discretion in awarding attorney fees, even though some awards exceeded the lien amount recovered.
Affirmed in part and reversed in part.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.