*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1879**

Susan Esther Safstrom,
Appellant,

vs.

Justina Elise Morin,
Respondent,

and

Justina Elise Morin obo minor children,
Respondent,

vs.

Susan Esther Safstrom,
Appellant.

**Filed September 19, 2016
Affirmed
Ross, Judge**

Beltrami County District Court
File Nos. 04-CV-15-2584
04-CV-15-2499

Susan Esther Safstrom, Bemidji, Minnesota (pro se appellant)

Justina Elise Morin, Bemidji, Minnesota (pro se respondent)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Justina Morin and Susan Safstrom are neighbors who each filed a petition for a harassment restraining order against the other to settle a lengthy feud mostly about smoke emanating from fires on Morin's property. The district court granted Morin's petition against Safstrom but denied Safstrom's petition against Morin. On appeal, Safstrom argues that there is insufficient evidence to establish that she engaged in more than one incident of harassment. Because we conclude that the district court did not err by finding that Safstrom harassed Morin by repeatedly approaching or entering Morin's property uninvited and yelling at her children, we affirm.

## FACTS

Susan Safstrom and Justina Morin are neighbors in Beltrami County. The two had been in a lengthy quarrel by August 2015 when each filed a petition for a harassment restraining order against the other. In the previous months, the two argued about smoke that drifted onto the Safstrom property from fires on the Morin property.

The district court considered both petitions together at a hearing where the parties presented conflicting testimony about the purpose of the fires. Morin testified that she lit about 20 fires throughout the summer near the side of her house so her four young children could roast marshmallows. She said that on the day before she filed her petition, Safstrom came on her property, yelled at her, and accused her of lighting fires to expose her children to smoke so that they might become disabled, allowing Morin to collect welfare. Morin also said that Safstrom would stand at the end of her own driveway and had "yelled stuff"

at her children. She added that Safstrom would film her home. Morin testified that her children can no longer play in their driveway because "[Safstrom] is always yelling at [them]."

Safstrom offered a different motive for Morin's fires. She asserted that Morin really intended to harass her with the smoke. She testified that Morin was burning garbage and grass, and she claimed that the smoke made her ill. She opined that Morin lit the fires to retaliate for Safstrom's previous complaints to Morin critical of Morin's having loud guests late at night. Safstrom admitted that she had been video-recording Morin's property, but she maintained that she intended only to document the excessive smoke. The recordings include footage of the smoke, and include Morin's children. Safstrom admitted to making the welfare comment and that she did so in a "fit of anger."

The district court reviewed photographs and video recordings. The photographs depict a smoke plume that is substantially more voluminous than one would ordinarily associate with a campfire. The district court pressed Morin about the amount of smoke, and she admitted that she did burn some grass on one occasion. She maintained that she never burned any garbage. She denied that she lit the fires to bother Safstrom.

The district court granted Morin's petition and denied Safstrom's. Safstrom now appeals the harassment restraining order against her.

## DECISION

A district court may issue a harassment restraining order if it has "reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). "Harassment" is defined in relevant part as "repeated incidents of

3

intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2014). We review the grant of a harassment restraining order for an abuse of discretion, and we will reverse if the order is not supported by sufficient evidence. *Kush v. Mathison*, 683 N.W.2d 841, 843–44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). The district court's fact-findings will not be set aside unless they are clearly erroneous, and we defer to the district court's credibility determinations. *Id.*

In concluding that Safstrom engaged in harassment, the district court found that she:

> [M]ade uninvited visits to the Petitioner(s) as follows: Respondent came onto Petitioner's property uninvited on numerous occasions to complain about her activities and those of her guests.
>
> [F]rightened Petitioner(s) with threatening behavior as follows: Respondent yelled at Petitioner and her children.
>
> [T]ook pictures of the Petitioner(s) without permission of the Petitioner(s) as follows: [Safstrom] repeatedly filmed Petitioner, her home and activities of those at her home.
>
> [Safstrom] admitted telling Petitioner in anger (Petitioner's children were present) that Petitioner wanted to cause her children a disability by exposing them repeatedly to the smoke of outside fires so she could collect more welfare.

Safstrom concedes that her welfare comment was an incident of harassment. But she argues that we must reverse because it is the only incident of harassment supported by the record. *Peterson v. Johnson*, 755 N.W.2d 758, 766 (Minn. App. 2008) ("One incident of an intrusive or unwanted act is insufficient to prove harassment if there is no infliction of

4

bodily harm or attempt to inflict bodily harm."). We agree that there is not much harassment here, but the evidence supports the district court's findings that Safstrom repeatedly harassed Morin by yelling at her children.

Safstrom concedes that she yelled from her own property on multiple occasions. But she asserts that Morin made no allegation that the yelling frightened or threatened her or her children. The argument is belied by Morin's petition and supporting affidavit. And it is belied by testimony credited by the district court. Morin swore in her affidavit that Safstrom scared her children. And Morin testified that Safstrom was "always yelling at [Morin's] kids" while they played, so they could no longer play in their circular driveway or "in the front yard." Although the allegation is not developed in detail, it sufficiently supports the finding that the children were frightened by Safstrom's behavior.

Safstrom also contends that the yelling incidents do not constitute harassment because they were only vaguely alleged and the mere act of yelling is not objectively unreasonable. It is true that the evidence regarding the yelling incidents is not precise. Morin stated only that on an unspecified number of occasions, Safstrom "[came] to the end of [Safstrom's] driveway and yell[ed] stuff at [her kids]." But a lack of specificity as to the date or content of the interaction does not prohibit the finding of an incident of harassment. *See Kush*, 683 N.W.2d at 844 (citing *Davidson v. Webb*, 535 N.W.2d 822, 823–24 (Minn. App. 1995)). Safstrom is also correct that yelling does not by itself constitute harassment. *See Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006) (noting that the statute "requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct"),

5

*review denied* (Minn. Mar. 28, 2006). Words can of course be yelled without being "intrusive or unwanted." Minn. Stat. § 609.748, subd. 1(a)(1). But in the context of the ongoing feud, it was not an abuse of discretion for the district court to find that Safstrom's yelling was intrusive or unwanted, frightening Morin's children.

The district court also supported its order with its finding that Safstrom repeatedly filmed Morin's home. The problem here is that if Safstrom believed that Morin was engaging in harassment or otherwise creating a nuisance, we see nothing in the antiharassment statute (or in any other statute referenced by the district court or the parties) that prevents her from collecting video evidence of the alleged nuisance so that she could support her claim in court (or use the footage for any other lawful purpose). That the video recording occasionally included incidental images of Morin's children somewhere in the frame does not mean that the recording constituted harassment. We add that the images of the children are arguably relevant here; they could bear on Morin's claim that the fires were mainly for roasting marshmallows. We agree with Safstrom that the filming as it occurred here, without more, does not constitute harassment as described in the statute. We do not address any implicit First Amendment issues.

But the district court's finding that the filming constitutes harassment is not necessary to its decision. The district court found (and Safstrom admitted) that Safstrom on multiple occasions engaged in the yelling either on or at the edge of Morin's property. And the district court found that this conduct frightened the children, crediting Morin's account that Safstrom's conduct altered how the children use the property. We are satisfied that these constitute "repeated incidents of intrusive or unwanted acts, words, or gestures

6

that [had] a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another."

Safstrom further challenges the harassment restraining order on the grounds that the district court judge was biased and denied her adequate time to present her case. We have reviewed the record and see no hint of support for the arguments.

**Affirmed.**